IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENNETH YARBROUGH and JOSEPH MAGLIOZZI individually and on behalf of all similarly situated individuals,<br><br>Plaintiffs,<br><br>-v-<br><br>MARTIN'S FAMOUS PASTRY SHOPPE, INC.,<br><br>Defendant. | Court File No. _____<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**<br><br>(EQUITABLE RELIEF SOUGHT) |

Plaintiffs, on behalf of themselves and other similarly situated individuals, by and through their undersigned counsel, file this Class and Collective Action Complaint and aver as follows:

## NATURE OF ACTION

1.     This is a Class and Collective Action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a class of individuals who operate(d) as distributors for Defendant, Martin's Famous Pastry Shoppe, Inc. ("Martin's") and who Defendant classifies or classified as independent contractors. Plaintiffs allege violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, *et seq*; N.C. Admin. Code § 12.0305; and North Carolina common law.

2.     The class consists of all individuals who operate(d) as distributors for Martin's, and are or were classified as independent contractors, in North Carolina, Maryland, Delaware, West Virginia, New York, Massachusetts, Connecticut, and Pennsylvania, at any time during the applicable limitations period ("Class" or "Distributors").

3.      This action challenges both the classification of these individuals and Defendant's denial to Plaintiffs and the Class of the rights, obligations, privileges and benefits owed to them as employees. Plaintiffs also seek remedies for unjust enrichment.

PARTIES

4.      Plaintiff Kenneth Yarbrough ("Yarbrough") is a resident of Union County, North Carolina, who works as a Martin's Distributor in that state. He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Martin's.

5.      Plaintiff Joseph Magliozzi ("Magliozzi") is a resident of Iredell County, North Carolina, who worked as a Martin's Distributor in that state from approximately March, 2010 until March, 2011. He performed delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Martin's until the company unilaterally terminated his employment.

6.      Martin's is a Pennsylvania corporation with its principal place of business at 1000 Potato Roll Lane, Chambersburg, Pennsylvania 17201. Martin's hires individuals, whom it classifies as independent contractors, to distribute, deliver and sell bakery and snack food products throughout the United States.

JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005, and 28 U.S.C. § 1367, supplemental jurisdiction for North Carolina Claims.

8.      Upon information and belief, there are more than 100 members in the Class, and the amount in controversy, in the aggregate, exceeds $5 million exclusive of interest and costs.

9.      Venue is proper in this Court under 28 U.S.C §§ 1391(b)(1) and 1391(c) because Martin's principal place of business is located in Chambersburg, Pennsylvania.

10.     Plaintiffs bring this action on behalf of themselves, a Federal Collective Group, and a North Carolina Class.

## COLLECTIVE ACTION ALLEGATIONS

12.     Plaintiffs bring Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf this action on behalf of themselves and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendant or otherwise, performed or perform as Distributors for Defendant, and who were classified by Defendant as "independent contractors" (collectively "Covered Positions") anywhere in the United States at any time from the date that is three years plus 214 days preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).[1]

The "Federal Collective Group" also includes the named Plaintiffs in this action.

13.     Plaintiffs, along with current and former employees of Defendant, in Covered Positions are similarly situated in that they have substantially similar job requirements, pay provisions, and are subject to Defendant's common practice, policy, or plan of controlling their daily job functions.

---

[1] Prior to Plaintiffs filing this Class and Collective Action Complaint and Jury Demand, the parties entered into a tolling agreement while they explored the possibility of resolving this matter without court intervention. The tolling agreement, attached hereto as **Exhibit A**, provided that number of days constituting the duration of the tolling agreement shall be added to each class members' statute of limitations.

14.        Defendant regularly permitted and required Plaintiffs and members of the Federal Collective Group to work more than 40 hours per week without overtime compensation and minimum wage.

15.        Upon information and belief, Defendant knew that Plaintiffs and all similarly situated individuals performed work that required overtime pay and that received less than minimum wage.

16.        Defendant has therefore operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all time worked.

17.        Defendant has therefore also operated under a scheme to deprive these employees of minimum wage by requiring them to pay its business expenses to such an extent that some Distributors ultimately receive less than minimum wage.

18.     Defendant's conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiff and all similarly situated individuals.

19.     Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), since the claims of the Plaintiffs are similar to the claims of current and former "independent contractors" who worked for Defendant.

20.     Defendant is liable under the FLSA for failing to properly compensate Plaintiffs and all similarly situated individuals, and notice of this lawsuit should be sent to them. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records.

## CLASS ACTION ALLEGATIONS

21.        Plaintiffs bring Counts -- through -- of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a "North Carolina Class" defined as follows:

> All individuals who, through a contract or agreement with Defendant or otherwise, performed or perform in a Covered Position in North Carolina at any time from the date that is three years plus 214 days preceding the commencement of this action through the close of the court-determined opt-out period.

22.        Plaintiffs reserve the right to redefine the Class prior to class certification.

23.     Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members are unknown to Plaintiffs. However, upon information and belief, it is in excess of 100 individuals. The true number of Class members is, however, likely to be known by Defendant, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

24.     Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class; those questions predominate over any questions that may affect individual Class members, and include the following:

a)      whether Plaintiffs and members of the Class have been misclassified as independent contractors and actually were or are employees of Defendant;

b)      whether Defendant has violated the rights of Plaintiffs and members of the Class under the North Carolina Wage and Hour Act and common law by failing to pay them overtime and minimum wage, making illegal deductions from their wages, depriving them of other benefits of being employees and requiring them to pay Defendant's expenses;

c)      whether Plaintiffs and members of the Class are entitled to injunctive relief prohibiting Defendant from making illegal deductions from the wages of Plaintiffs and members of the Class;

d)      whether Plaintiffs and members of the Class are entitled to declaratory relief declaring that they are employees of Defendant;

e)      whether Plaintiffs and members of the Class are entitled to injunctive relief requiring Defendant to convey to Plaintiffs and the Class the rights, privileges and benefits of employees;

f)      whether the Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Class; and

g)      whether Plaintiffs and members of the Class are entitled to certain types of pension and other benefits because they are employees of Defendant.

25.    Typicality: Plaintiffs' claims are typical of the other members of the Class. Plaintiffs are informed and believe that, like other distributors, Plaintiffs were misclassified as an "independent contractor" when they actually were statutory and common law employees, and were therefore deprived the protections of employee status under the law. Plaintiffs had the same duties and responsibilities as other Class members, and were subject to the same policies and practices, and the same or substantially similar conditions of employment.

26.    Adequacy: The named Plaintiffs will adequately represent the interests of the Class. They have been treated in the same manner as other Class Members by Defendant and have been damaged by this treatment in the same manner as other class Members by their loss of overtime and minimum wage, their exclusion from employee compensation programs, plans and agreements, and their payment of Defendant's expenses. Plaintiffs are committed to vigorously

prosecuting this action. Plaintiffs have retained attorneys who are well-qualified to handle lawsuits of this type. Plaintiffs have no interests that are adverse to those of the Class.

27.     Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendant's liability predominate over any individual questions, including the amount of damages incurred by each person.

28.     Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the North Carolina Class. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

<u>FACTUAL BASIS</u>

29.     Defendant is a corporation whose business consists of distributing bakery and snack food products to retail customers, using a centralized network of communication, distribution, and warehousing facilities integrating Class members into that existing network of operations.

30.     Defendant has entered into a relationship with each Plaintiff and each of the Class members to sell, merchandise, distribute and deliver bakery and snack food products to retailers throughout the eastern United States. The relationship between each member of the Class and Defendant is essentially the same in material respects.

31.     Defendant ships bakery and snack products to warehouses and Distributors, such as Plaintiffs and members of the proposed Class, arrive at a warehouse early in the morning and load their vehicles with Defendants' products.

32.     The distributors then deliver the product to Defendants' retailer-customers at the time and place specified by Defendant.

33.     Distributors use Defendant's hand-held computer to log the delivery, and Defendant bills its customers using the data entered into the computer by the Distributor. The terms of the sale are negotiated between Defendant and its retailer-customer. In rare cases, the Distributor may collect payment from the retailer.

34.     Distributors place Defendant's products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Defendant is running a sale or promotion, the Distributor also constructs and stocks the promotional display. Defendant reimburses Distributors for stale or rejected product.

35.     Generally, Defendant guarantees Plaintiffs a minimum profit that is the greatest of $800 per week or 24% of the sale price for each product sold by a retailer-customer.

36.     Defendant represented to Plaintiffs and other Distributors that they would run their businesses independently have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

37.     Contrary to its representations, Defendant denied Plaintiffs and other Distributors any benefits of ownership and entrepreneurial skill by retaining and exercising the following rights:

        a)      the right to change a Distributor's territory without negotiation, including requiring a Distributor to take on new unestablished territories;

b)      the right to assign a Distributor's established territory to another Distributor without compensation for the equity established in the territory;

c)      the right to remove a Distributor from his or her territory without compensating the Distributor;

d)      the right to negotiate the wholesale price for the purchase and sale of products;

e)      the right to negotiate shelf space in the stores in the Distributor's territory;

f)      the right to establish all sales and promotions and to require Distributors to follow them;

g)      the right to change orders placed by Distributors, to require them to pay for products they did not order, load it on their trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit; Distributors who did not attempt to distribute the extra product were billed for the full wholesale price of that product;

h)      the right to assign delivery stops to each distributor in a particular order and require Distributors to get approval for following a different order;

i)      the right to discipline Distributors, up to and including termination, including for hiring employees to run their routes, for taking time off work, or for refusing a specific order to deliver a product to a particular store at a particular time;

j)      the right to handle customer complaints against the distributor and to take disciplinary action;

k)      the right to withhold pay for certain specified expenses; [did this happen?]

l)      the right to unilaterally terminate the employment relationship;

m)      the right to unilaterally vary the standards, guidelines, and operating procedures; and

n)      various other rights reserved by Defendant.

38.     Plaintiffs and Class members were, or are, required to accept Defendant's conditions of employment or face termination.

39.     Defendant not only retained the rights listed above, but it exercised the rights as well.

40.     For example, Defendant removed Plaintiff Magliozzi from his territory in March, 2011. Defendant did not compensate Mr. Magliozzi for re-assigning his territory—it didn't pay him for his equity in the route or pay him profits from the operating the route—it simply terminated his employment and hired a new person to make deliveries in the territory.

41.     In another example, Defendant routinely modifies a Distributor's product order to increase the amount of the order. If a Distributor refuses the additional product, Defendant bills the Distributor for the product and deducts the cost from the Distributor's wages.

42.     In another example, Defendant unilaterally modified Plaintiff Yarbrough's established territory in 2009 (Defendant modified a number of territories at this time). Mr. Yarbrough's new territory included a new market for Defendant, which meant that Mr. Yarbrough's pay was reduced because customers were unfamiliar with Defendant's product. Defendant did not present Mr. Yarbrough with an opportunity to negotiate the change, and it did not pay him for the equity and goodwill that he established in his original territory.

43.     On one occasion, Dave Stillman, one of Defendant's managers threatened to fire Plaintiff Yarbrough if he didn't deliver six loafs of bread to a WalMart store at a specific time.

44.     Defendant retains such tight control over Distributors that it must approve any assistants that Distributors may use to perform their job. Plaintiff Yarbrough is aware of two separate occasions in which Distributors attempted to hire an assistant to help them do their job, and in both cases Defendant gave an ultimatum that the distributor must personally operate his route, or he would have to leave the company.

45.     Defendant requires the Distributors to process all transactions through a hand held computer it provides to them. The hand held computer controls the product prices, maintains customer information, tracks mileage, and monitors business performance.

46.     When there are errors in the prices entered in the handheld, the Distributors are required to sell the products at the erroneous price even if it resulted in their losing money on the sale.

47.     Defendant controls the compensation Plaintiffs and members of the Class can earn by controlling profit margins. Specifically, Defendant negotiates the sale of its products with major retailers. Plaintiffs and members of the Class then deliver the products to store locations per the agreement between Defendant and the retailer.

48.     Defendant maintains compensation and benefit plans, agreements and programs available to persons who are classified by Defendant as employees. Upon information and belief, the benefit plans include: health benefit, life insurance, short-term and long-term disability, retirement, and 401(k) savings, and other benefits. In addition, persons whom Defendant classifies as employees receive other compensation programs, plans, rights, and benefits, including, but not limited to, vacation, holidays, sick leave, and other types of paid leave.

49.     Because they were misclassified as non-employees, Plaintiffs and members of the Class were denied the rights and benefits of employment, including, but not limited to wages, holiday pay and vacation, as well as the other benefits identified above.

39.     Plaintiffs and members of the Class have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant has required them to purchase or pay, or that are necessary for their work.

40.     Plaintiffs and members of the Class were, or are, required to pay Defendant's operating expenses, all of which should have been paid by Defendant, including, but not limited to:

     a)     delivery vehicle purchase or lease and registration;

     b)     various insurance, including vehicle insurance and work accident insurance;

     c)     delivery vehicle maintenance and repairs;

     d)     maintenance of uniforms;

     e)     fuel;

     f)     the costs of product loss, product return, and product expiration; and,

     g)     service fees for using the hand-held equipment necessary to transact business.

Items 1–5 above can be mechanically calculated for each class member using the IRS standard mileage rate for each year in the class period; items 6 and 7 can be mechanically calculated for each class member using Defendant's business records that are maintained, in part, using the company-provided hand-held computers.

41.     Upon information and belief, a large number of members of the Class earned $800 per week, or $41,600 per year.

42.     Upon information and belief, and based upon Plaintiff Yarbrough's audited tax returns, unreimbursed work-related expenses of a distributor are $35,000 per year, or $673 per week.

43.     Accordingly, the average take-home pay for a distributor is approximately $127 per week, or $6,604 per year.

44.     At all relevant times, Plaintiff Kenneth Yarbrough earned no more than $54,000 per year, or approximately $1,038 per week. His average unreimbursed work-related expenses are approximately $35,388 per year. Accordingly, his weekly take-home pay is approximately $327. Specifically, in 2009, Plaintiff Yarbrough's net take-home pay was $8,918.

45.     During the relevant time period, Plaintiff Yarbrough worked in excess of 40 hours every week of the year. Servicing stores can take from 30 minutes to two hours. Plaintiff worked 50–52 hours per week on average. He never worked less than 45 hours per week and at times had to work up to 60 hours to service all his assigned stores. He is aware of other Distributors who worked 50 hours or more per week on average.

46.     The table below itemizes the unreimbursed expenses Plaintiff Kenneth Yarbrough incurred for Defendant's exclusive benefit as listed on his IRS tax forms:

| Expense | Year 2009 | Year 2008 | Year 2007 |
|---|---|---|---|
| Truck expenses | $27,874 | $22,343 | $20,033 |
| Depreciation | --- | $1,895 | --- |
| Insurance (other than health) | $600 | --- | $828 |
| Legal & professional services | --- | $725 | $400 |
| Office expense | $235 | $1,024 | $187 |
| Rent or lease of other business property | $320 | --- | --- |

| Repairs and maintenance | $921 | $159 | $537 |
|---|---|---|---|
| Taxes and licenses | --- | $80 | $164 |
| Other expense | $9,605 | $8,648 | $9,278 |
| **Total expenses** | **$39,546** | **$34,874** | **$31,745** |

49.     Defendant's mischaracterization of the distributors as independent contractors, the concealment or non-disclosure of the true nature of the relationship between Defendant and the distributors, and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful practice by Defendant which this Court should enjoin.

<u>COUNT I</u>
FAILURE TO PAY MINIMUM WAGES
TO THE FEDERAL COLLECTIVE GROUP
FLSA, 29 U.S.C. §§ 201 *et seq.*

(On behalf of the named Plaintiffs and the Federal Collective Group)

50.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

51.     Section 206(a) of the FLSA provides in pertinent part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages [not less than the federal minimum wage].

29 U.S.C. § 206(a) (2010).

52.     There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

53.     For purposes of the FLSA, the employment practices of Defendant were and are uniform throughout the eastern United States in all respects material to the claims asserted in this Complaint.

54.     Plaintiffs and the other members of the Federal Collective Group, either regularly or from time to time, were paid less than the federal minimum wage that applied during the applicable limitations period by Defendants as payment for hours worked.

55.     In committing the wrongful acts alleged to be in violation of the FLSA, Defendant acted willfully in that they knowingly, deliberately, and intentionally failed to pay minimum wages to Plaintiffs and other members of the Federal Collective Group.

56.     As a result of Defendant's failure to pay minimum wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

57.     Therefore, Plaintiffs demand that they and the other members of the Federal Collective Group be paid minimum wages as required by the FLSA for every hour worked in which they were paid less than the minimum wage, plus interest, damages, penalties, and attorneys' fees as provided by law.

COUNT II
FAILURE TO PAY OVERTIME
TO THE FEDERAL COLLECTIVE GROUP
FLSA, 29 U.S.C. §§ 201 *et seq.*
(On behalf of the named Plaintiffs and the Federal Collective Group)

58. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

59. Section 206(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives

> compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (2010).

60.     There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

61.     For purposes of the FLSA, the employment practices of Defendant were and are uniform throughout the eastern United States in all respects material to the claims asserted in this Complaint.

62.     Plaintiffs and the other members of the Federal Collective Group, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

63.     In committing the wrongful acts alleged to be in violation of the FLSA, Defendant acted willfully in that they knowingly, deliberately, and intentionally failed to pay minimum wages or overtime to Plaintiffs and other members of the Federal Collective Group.

64.     As a result of Defendant's failure to pay minimum wages or overtime, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

65.     Therefore, Plaintiffs demand that they and the other members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law.

COUNT III
FAILURE TO PAY MINIMUM WAGE
North Carolina General Statutes Ch. 95-25.3
(On behalf of named Plaintiffs and the North Carolina Class)

66.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

67.     The North Carolina Wage and Hour Act provides, in relevant part, as follows:

> Every employer shall pay to each employee who in any workweek performs any work … the minimum wage set forth in paragraph 1 of section 6(a) of the Fair Labor Standards Act, 29 U.S.C. 206(a)(1), as that wage may change from time to time …

N.C. Gen. Stat. § 95-25.3 (2010).

68.     Defendant is an employer within the meaning of the Wage and Hour Act.

69.     Plaintiffs and the other members of the North Carolina State Class are employees of Defendant within the meaning of the Act and, as such, are entitled to the benefits of the Act's minimum wage requirements.

70.     While working for Defendant, Plaintiffs and other members of the North Carolina State Class were required to pay for various operating expenses, which were properly the expenses of Defendant and which were not reimbursed by Defendant, including, but not limited to, product loss and product return, vehicle expenses, and insurance costs in violation of North Carolina's Wage and Hour Act.

71.     The costs of such expenses when deducted or credited against each such distributor's pay during the week in which purchases were made, has, at times, resulted in distributors being paid less than the appropriate minimum wage under North Carolina law.

72.     Alternatively, Defendant's uniform policy of requiring its distributors to pay for various operating expenses and costs which were properly the expenses of Defendant, while not reimbursing the distributors for such payments, and not crediting such expenditures against

distributors' pay for purposes of calculating minimum wages, represents and results in violations of North Carolina's minimum wage requirements.

73.     Also, Defendant did not pay, and is continuing to not pay, Plaintiffs and the other members of the North Carolina State Class the statutorily required minimum wage for all hours worked.

74.     As a consequence of Defendant's misclassification, Plaintiffs and the members of the North Carolina State Class were, and continue to be, denied statutory minimum wages (and interest due pursuant to N.C. Gen. Stat. § 95-25.22) and have suffered and continue to suffer actual, ascertainable losses by virtue of Defendant's misclassification of them as independent contractors and illegal deductions from their wages.

COUNT IV
FAILURE TO PAY OVERTIME
North Carolina General Statutes Ch. 95-25.4
(On behalf of named Plaintiffs and the North Carolina Class)

75.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

76.     The North Carolina Wage and Hour Act provides, in relevant part, as follows:

> Every employer shall pay to each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of the regular rate of pay of the employee for those hours in excess of 40 per week …

N.C. Gen. Stat. § 95-25.4. And,

77.     Defendant is an employer within the meaning of the Wage and Hour Act.

78.     Plaintiffs and the other members of the North Carolina State Class are employees of Defendant within the meaning of the Act and, as such, are entitled to the benefits of the Act's overtime requirements.

79.     North Carolina's Wage and Hour Act applies to the claims of all members of the North Carolina State Class.

80.     Plaintiffs and members of the North Carolina State Class worked in excess of 40 hours per week at least some weeks each year; however, Defendant failed to pay Plaintiffs and members of the North Carolina State Class overtime wages for all hours worked over 40.

81.     As a consequence of Defendant's misclassification, Plaintiffs and the members of the North Carolina State Class were, and continue to be, denied statutory overtime wages (and interest due pursuant to N.C. Gen. Stat. § 95-25.22) and have suffered and continue to suffer actual, ascertainable losses by virtue of Defendant's misclassification of them as independent contractors and failure to pay overtime wages.

COUNT V
ILLEGAL DEDUCTIONS
North Carolina General Statutes Ch. 95-25.8
(On behalf of named Plaintiffs and the North Carolina Class)

82.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

83.     The North Carolina Wage and Hour Act at § 95-25.8 limits deductions from employee wages to particular circumstances such as "cash shortages, inventory shortages, or loss or damage to an employer's property" but these deductions are only allowed after giving the employee written notice of the amount to be deducted.

84.     Plaintiffs and the other members of the North Carolina State Class are employees of Defendant within the meaning of the Act.

85.     Defendant is an employer within the meaning of the Wage and Hour Act.

86.     North Carolina's Wage and Hour Act applies to the claims of all members of the North Carolina State Class.

87.     Defendant has unlawfully withheld monies from the compensation earned by Plaintiffs and the North Carolina Class for business expenses of Defendant, including but not limited to, vehicle expenses, insurance coverage, and communications equipment all in violation of North Carolina law. Plaintiffs and the members of the North Carolina Class have not expressly and freely given written consent to such deductions and these deductions are not made in response to a valid wage assignment or deduction order.

88.     Defendant has withheld these funds unlawfully without providing advance notice to the Plaintiffs and members of the North Carolina Class of the amounts, reasons, or documentation to justify such deductions, and absent any lawfully sufficient reason for such conduct.

89.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the members of the North Carolina State Class were, and continue to be, deprived of compensation to which they were entitled, and have suffered substantial losses including monetary damage, pre-judgment interest, costs, and reasonable attorneys' fees.

Count V
UNJUST ENRICHMENT
(On behalf of named Plaintiffs and the North Carolina Class)

90.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding Paragraphs.

91.     Plaintiffs and members of the North Carolina Class are actually employees of Defendant, not independent contractors.

92.     Plaintiffs and members of the Class were required to pay operating expenses detailed in this Complaint which were properly the expenses of Defendants.

93.     Defendant was unjustly enriched by requiring Plaintiffs and the other members of the North Carolina Class to pay its operating expenses.

94.     The performance of work activities as described in this Complaint conveys a benefit to Defendant, which it has knowingly received.

95.     Defendant is not entitled to this benefit, and retaining it without paying for it would be unjust to Plaintiffs and the other members of the North Carolina Class.

96.     Consequently, Plaintiffs and the other members of the North Carolina Class are entitled to recover the reasonable value of the benefits conveyed to Defendant by the performance of the work activities as described in this Complaint.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request of this Court the following relief on behalf of themselves, all members of the Class and all other similarly situated individuals:

a.     An Order certifying the Federal Collective Group and the North Carolina Class, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as Class Counsel;

b.     An Order for declaratory and injunctive relief designating the Plaintiffs and members of the Federal Collective Group and North Carolina Class as employees and enjoining Defendants from pursuing the illegal policies, acts and practices described in this Complaint;

c.     An Order declaring the Defendant's conduct as willful, not in good faith and not based on reasonable grounds;

d.     An Order requiring Defendants to compensate Plaintiffs and the other members of the Class for the reasonable value of the benefits provided to Defendants;

e.   Reimbursement of the expenditures, costs, benefits and losses described in this Complaint,

f.   Reimbursement for unpaid wages at no less than minimum wage rates for all work described in this Complaint;

g.   Reimbursement of unpaid wages at overtime rates for all overtime work as described in this Complaint;

h.   Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including but not limited to liquidated damages;

i.   Judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest;

j.   Award Plaintiffs reasonable attorneys' fees and costs;

k.   Award Plaintiffs and the other members of the Class punitive damages in an amount to be determined at trial; and

l.   Grant such other and further legal and equitable relief as this Court deems just and necessary.

## JURY DEMAND

Plaintiffs, on behalf of themselves and members of the Class, hereby demand a trial by jury on all issues so triable.

Dated: <u>November 15, 2011</u>   Levin Fishbein Sedran & Berman


<u>s/Charles E. Schaffer</u>
Charles E. Schaffer
Daniel C. Levin
510 Walnut Street – Suite 500
Philadelphia, PA  19106
Telephone:  (215) 592-1500

Baillon Thome Jozwiak Miller & Wanta LLP


s/Shawn J. Wanta
Shawn J. Wanta
Bryce M. Miller
Suite 2955
222 South Ninth Street
Minneapolis, MN 55402
Telephone: (612) 466-0422


ATTORNEYS FOR NAMED PLAINTIFF